Curia, per

Earle, J.
The relator claims exemption from-the particular militia duty which he was required to perform. The opinion of the court on that question, will render a consideration of the others which have been argued unnecessary.
The Act of Congress, of 1792, “more effectually to provide for the national defence, by establishing an uniform militia,” enacts, that every free able bodied white male citizen of the respective States, resident therein, of the age of eighteen years, and under forty-five years, (with exceptions) shall be enrolled in the militia. The next section contains and specifies the exceptions. And it is important to the decision of this question. It provides that the Vice President, the officers, judicial and executive, of the federal government, the members of Congress and their officers, all officers of the customs or post office, and many others holding appointments under the government of the United States, shall be exempted from militia duty, notwithstanding their being above the age of eighteen *311 and under the age of forty-five years. And tho same section also exempts from militia duty “all persons who now are, or shall hereafter be, exempted by the laws of the respective States.” The first Act to organize the militia of this State, in conformity with the Act of Congress, passed in 1794. By the 23d section of that Act, persons of various professions and descriptions were excused from militia duty, except in times of invasion or alarm. By the Act of 1533, to provide for the military organization of this State, in the 46th section it is enacted “That the following persons, and none others, shall be exempt from the performance of ordinary militia duty, (and those not in time of alarm or military invasion) to wit,” — enumerating the various officers of government, executive, judicial, and ministerial, and other persons holding appointments under the State, including the relator, being a toll collector on the State road. The draft to which the relator was subjected, was made under an order issued by the Executive of the United States ; and in order to determine the question, what classes of persons were liable to that draft, it will be necessary to refer to the Act of Congress, of 1795, to provide for calling forth the militia, to execute the laws, suppress insurrections, and repel invasions. It provides, “That whenever the United States shall be invaded, or be in imminent danger of invasion from any foreign nation, or Indian tribe, it shall be lawful for the President of the United States to call for such number of the militia of the State or States, most convenient to the place of danger or scene of action, as he may judge necessary.” The enquiry which presents itself on such an emergency, is, what classes of persons compose the militia, who are thus liable to' be called forth to repel an invasion of a neighboring State ? And the Act of Congress of 1792 furnishes the answer ; all free able bodied white men, between eighteen and forty-five years of age, enrolled in the militia by virtue of that Act, except such persons as are exempted from militia duty by that Act, including such as the State has thought fit to exempt, by the Act of 1794, or of 1S33, in pursuance of the Act of Congress. It will be important to bear in mind, that the Act of 1792 exempts all who are embraced in the exception, from all militia duty, without reference to the occasion, or to the nature of the service ; it exempts as well a ferryman on a post road, as the Chief Justice of the United States, from any militia duly whatever. And when the executive of the United States calls forth a portion of the militia, it is to be taken from the militia as organized by that Act, or by the States in pursuance of and in conformity with that Act.
Our Act of 1794, to organize the militia in conformity with the Act of Congress, and our Act of 1833, to provide for the military organiza *312 tion of the State, are to be regarded in a twofold ^aspect: first, in refer-*' ence to the service which the militia may be required to perform, under the authority of the United States, under the Act of Congress, of 1795; and secondly, in reference to the service which they may be required to perform under the authority of the State. Both Acts provide for the militia being called out by the Executive of the State, or other State authorities, in cases of invasion or alarm. These terms occur in both Acts, and are exceptions to the exemption of any individuals or classes of persons excused from ordinary militia duty. The terms invasion or alarm; do not occur as an exception in the Act of Congress, of 1792; when a portion, therefore, of the militia of the State is called out by the Executive of the United States to repel the invasion of a neighboring State-, the selection or draft is to be madd from the class' of pérsons regularly enrolled, between eighteen and forty-five years, to perform ordinary militia duty. When a portion of the militia is called out by the authority of the State, ordinarily, I apprehend the draft should be made in like manner, until the proper authority shall declare that the emergency has occurred, the time of alarm or military invasion, when all the citizens of the State, however elevated their station or important their office, are required to aid in the public defence.
Any other construction of these Acts, would be highly prejudicial to the interests of the State, derogatory from its honor and dignity, and would lead to consequences at once absurd and injurious. All the persons who are exempted by the Act of Congres of 1792, aré wholly excused from militia duty. They are not only exempted from service under the call of the Executive of the United States, but they are beyond the reach of our own militia laws; and cannot be called on, even in case of invasion or alarm, by the State authorities. If the construction contended for against the motion, were to prevail, this absurd and unjust consequence might ensue: whilst not only the higher officers of the general goverment, but every Post master, every petty Inspector and Gauger in the service of the revenue, nay, every stage driver and ferry-' man on a post road, are exempt from all service in the militia, at home or abroad ; all our own State officers of every grade, of the police and revenue, executive, judicial and ministerial, even the members of this court, might not only be required by the btate to aid in her defence at home, but might be required by the authorities of the United States to' bear arms in a campaign abroad, or to aid in repelling an invasion of another State, when they should be engaged in the discharge of their more appropriate and equally important duties at home. Neither Congress nor the Legislature ever meant any thing so preposterous.
*313 It was suggested in argument, that the relator having enrolled himself in a volunteer corps, thereby voluntarily subjected himself to draft, and thus waived his privilege of exemption. But we think otherwise. In case of invasion or alarm occurring within the State, he was liable to serve. By enrolling himself in a volunteer corps he showed a readiness to serve the State at home, promptly and efficiently, without the process of draft; and when by the act of his superior officers he was subjected to draft under the requisition of the United States, he had no opportunity to avail himself of his exemption until he appeared before the court. Besides, it would be ungracious and unjust to convert an act of patriotism into a waiver of a privilege.
The court is of opinion that the relator was exempted from draft for the particular service. , That the court exceeded its jurisdiction and decided against law in finding him guilty of disobedience of orders, and in imposing the sentence of fine and imprisonment. It is ordered that the writ of prohibition do issue to restrain the said court and all others from enforcing the said sentence. Ordered, also, that the relator be discharged from his recognizance, and that he go thereof;without day.
Gantt, Richardson, Evans, and Butler, JJ., concurred.